JAMES E. TOMPKINS CO. v. NEW YORK WOVEN WIRE MATTRESS CO.

(Circuit Court of Appeals, Second Circuit.   January 7, 1907.)

No. 116.

1. PATENTS—INFRINGEMENT—DESIGN FOR BED SPRING.

The Tompkins design patent, No. 37,649, for a design for bed-springs, *held* either void for lack of patentability or not infringed on uncontradicted testimony that defendant made and sold springs in all essentials like those alleged to infringe before the application for the patent was filed.

2. SAME—DESIGNS—SUFFICIENCY OF DESCRIPTION.

A design patent like a mechanical patent must describe the article in such full, clear, concise, and exact terms as to enable persons skilled in the art to make and use the invention.

Appeal from the Circuit Court of the United States for the Southern District of New York.

On appeal from a decree of the Circuit Court for the Southern District of New York holding valid and infringed letters patent No. 37,649 granted to Daniel I. Tompkins, November 7, 1905, for a design for bed-springs and assigned to the complainant. The application for the patent was filed May 3, 1905. The opinion below is reported in 154 Fed. 669.

Charles C. Gill, for appellant.

J. E. Hindon Hyde, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The description of the bed-spring found in the specification is as follows:

"A new, original and ornamental design for a bed-spring, as shown in the accompanying drawing, which represents a transverse section of my design."

This is all. The claim is for "the ornamental design for a bed-spring as shown." We are thus relegated to the drawing as the sole source of information.

The drawing is about seven inches long and two inches wide and shows alternate sections of close and open weaving about three-quarters of an inch wide, separated by longitudinal strands, those on the

outside being of greater width than the others. The outside sections have the open weave, are a little over an inch in width and are subdivided by two longitudinal strands about five-sixteenths of an inch apart. The central section shows three bands of close weaving and two of open weaving. No one contends that the design as shown in the drawing could be applied, without change, to a bed-spring intended for actual use.

It is insisted by the defendant that when the bed-spring of the patent, which is seven inches wide, is made for use on an ordinary bed, the precise pattern shown must be correspondingly enlarged. In other words, the number of stripes shown in the drawing must be preserved and proportionately broadened, so that for a four foot bed the five central stripes will approximate six inches in width and the outside stripes (subdivided as before stated) about nine inches.

The complainant contends, on the contrary, that so to enlarge the drawing would destroy the identity of the design and present a different impression upon the eye. It is contended by complainant that any one skilled in the art would know that to make a spring for actual use the stripes must be widened sufficiently to give the necessary effect and the number of stripes increased to make up the desired width. There is no scale attached to the drawing of the patent.

The statute requires that the inventor shall describe what he has done in such full, clear, concise and exact terms as to enable persons skilled in the art to make and use the invention. As the parties differ radically as to what the design in question is, it may be doubted whether Tompkins has complied with the requirements of the statute in this regard. Both parties present equally plausible arguments in support of the design which, they respectively contend, is an embodiment of the drawing. It would seem that neither of these designs, tested from the view point applicable to design patents, infringes the other; the appearance to the eye being quite dissimilar. It is also to be noted that the complainant's expert contends that it makes no difference whether the individual elements are enlarged proportionately or the number of stripes increased, so long as the general appearance produced upon the eye is retained. But it is apparent that the design, if proportionately enlarged to fit a large double bed would present a totally different impression upon the eye. In other words, a manufacturer enlarging the design proportionately might infringe when making a spring for a single bed and might not infringe when making a spring for a double bed. There is nothing in the patent to show where the line of demarcation is to be drawn.

A design patent for which such an elastic construction is asserted can hardly be said to deal fairly with the public. The public is entitled to know what it may and may not do and the patent in hand fails to give this information as explicitly as it should. But, irrespective of these considerations, we think the suit cannot be maintained. Aaron Prince the vice president and general manager of the defendant testified that they commenced making beds similar to the complainant's exhibit, "Defendant's spring-bed," but without roll edges either in the latter part of 1904 or very early in 1905, and first sold them in

February, 1905, under the name of the "Regis Spring." This continued until April 16, 1906, when they commenced the manufacture of a bed known, as the "1906 Bed Spring," which the complainant does not, in this suit, contend is an infringement. He testifies further that about the same time that they made the springs without roll edges they made them with roll edges, both varieties being made in February, 1905.

A photograph of the spring without the roll edges was taken during that month and is in the record. Assuming the Regis spring to have been on sale prior to the application of the Tompkins patent, one of two results must inevitably follow, either the claim must be so limited that defendant does not infringe, or, if a construction broad enough to cover the defendant's structure is placed upon the claim, it must be held void for want of patentability. This is true whether the roll edges were added prior or subsequent to the date of the application. The addition of the edges would not make an old fabric patentable as a design. The roll had been known to the trade for at least five years prior to the patent and it will hardly be contended that, if the body of the Tompkins spring were old, a distinctly new, ornamental and patentable feature would be imparted to it by placing the enlarged coils at the edges.

Is Mr. Prince's statement true? Having in mind the fact that he is an interested witness and that his statements must be established beyond a reasonable doubt, we see no way to avoid the effect of his testimony, unless we are prepared to say that he has committed willful perjury. This we cannot do. Mr. Prince appears on the record to be an intelligent, straightforward, conservative, business man. He was not testifying about events happening so long ago that the memory might well be confused and clouded by the lapse of time and a multitude of intervening events. His testimony was given in 1906 and related to transactions in 1904-5, and it was not contradicted. Though he did not produce a Regis spring he gave the names of a number of dealers to whom the spring had been sold, so that if his statements were untrue it could easily have been discovered by an examination of these persons and the defendant's books. There is nothing astonishing or inherently improbable in Prince's testimony and we cannot disregard it.

The decree is reversed with costs and the cause remanded to the Circuit Court with instructions to dismiss the bill with costs.